**SO ORDERED.**

**SIGNED April 23, 2008.**



_____
ROBERT SUMMERHAYS
UNITED STATES BANKRUPTCY JUDGE
_____

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA

IN RE:

WETCO Restaurant Group, LLC                                  CASE NO. 07-51169

    Debtor                                                   Chapter 11

-----------------------------------------------------------------------------------------------------
**MEMORANDUM RULING**
-----------------------------------------------------------------------------------------------------

    Presently before the court is the MOTION OF PFG-MAGEE FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM PURSUANT TO 11 U.S.C. §503(b)(9). A hearing on the matter was held on February 26, 2008. After hearing testimony and receiving evidence, the matter was taken under advisement.

    The movant, Performance Food Group Magee ("PFG Magee"), seeks administrative priority for the value of goods shipped to WETCO Restaurant Group, LLC ("WETCO" or "Debtor") during the 20-day period prior to filing on September 28, 2007. Debtor argues that payment for those goods was made either contemporaneously with receipt or in advance of receipt of the goods. In other words, the goods delivered during the 20-day period prior to the commencement of this case (the "20-Day Goods") were pre-paid, and thus PFG Magee had no claim for these goods when the case was commenced. PFG Magee contends that the payments made in connection with the shipment of the 20-Day Goods were payments for prior shipments of goods purchased outside the 20-day window of section 503(b)(9), and that the shipments of 20-Day Goods remained unpaid on September 28, 2007. The court has reviewed the evidence submitted as well as the arguments of the parties and makes the following findings and conclusions:

1.  11 U.S.C. §503(b)(9) provides: "After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including ... the value of any goods received by the debtor within 20 days before the date of commencement of a case under this title in which the goods have been sold to the debtor in the ordinary course of such debtor's business." This provision was added in the 2005 amendments to the Bankruptcy Code, and there is little case law construing the scope of the provision.

2.  PFG Magee was one of WETCO's primary vendors of restaurant supplies during the period prior to filing. Another PFG unit, Performance Food Group Caro ("PFG Caro"), held the WETCO account until or around February 2007. At that point, PFG Magee took over the WETCO account from PFG Caro.

3.  At the time PFG Magee took over the account, WETCO had an outstanding balance to PFG Caro that was transferred with the account.

4.  A representative of PFG Magee, Tracey Beverage, testified that PFG Magee intended to continue the payment arrangements that were put into place when the account was with PFG Caro. Ms. Beverage's understanding of the arrangement between PFG Caro and WETCO was that WETCO was to make payments by wire to PFG Caro in advance of the shipment of products from PFG. $5,000.00 from each wire was used to reduce WETCO's overall outstanding balance with PFG. PFG would then ship products to WETCO's stores equal to the amount of the wire (less $5,000.00). These remaining payments were to be applied to the oldest outstanding invoice.

5.  Based on the testimony of Ms. Beverage, the latest shipments for goods were essentially provided on credit, because the payments made prior to shipment of these were applied to invoices reflecting prior shipments. With respect to the instant motion, PFG had a claim for the value of the goods shipped 20 days prior to the petition date, because the amounts paid by WETCO during that 20 day period were not payments for those "20-day goods," but were instead payments on old invoices.

6.  WETCO's witness, Mr. Kenneth Harris, testified that WETCO did have an agreement with PFG Caro that carried over to PFG Magee, and that WETCO had agreed to wire funds to PFG Caro and PFG Magee in advance of each shipment of products. Ms. Beverage correctly testified that $5,000.00 of the wire would be used to retire the outstanding debt from PFG Caro. However, according to Mr. Harris, the amount of the wire over and above the $5,000.00 was a pre-payment for each shipment. This agreement allowed WETCO to continue to receive goods from PFG Magee without increasing its overall debt to PFG, and, at the same time, reduce WETCO's outstanding balance to PFG Magee. If Mr. Harris' account of the agreement is true, then PFG does not have a claim on the 20-Day Goods because the goods were pre-paid as of the filing date.

7. PFG has the burden to establish that the value of the 20-Day Goods qualifies for administrative expense treatment under section 503(b)(9). In that regard, the value of the 20-Day Goods is not entitled to administrative expense treatment under section 503(b)(9) if WETCO pre-paid (or paid contemporaneously for) the shipments of these goods. The focus of the court's inquiry in this regard is the parties' agreement with respect to payments and shipments of products.

8. The court finds Mr. Harris' testimony on the nature of the agreement persuasive and supported by the evidence.

9. Neither party disputes the basic agreement: that WETCO was to wire funds in advance of shipment and $5,000.00 of the wire went toward retiring WETCO's overall debt. However, the evidence supports WETCO's contention that the remaining portion of the wire was a pre-payment for goods shipped after the wire was received.

10. The amount of the wire over and above $5,000.00 corresponded directly to the value of the product that was to be shipped after PFG Magee received the wired funds. If WETCO's stores did not order their full allotment from the wired funds, the remaining amount was not applied to past invoices, but was instead carried over to the next shipment. PFG Magee would only schedule a shipment if WETCO wired a payment, and PFG would ship only the amount of products equal to the funds wired by WETCO. Simply put, the transactions had all of the indicia of pre-paid shipments of goods, which is precisely the nature of agreement outlined in Mr. Harris' testimony.

11. Furthermore, the PFG Magee invoices reflecting the shipments of the 20-Day Goods were marked "pre-paid" in the "terms" portion of the invoice. This fact further corroborates Mr. Harris' testimony on the nature of the parties' agreement and the fact that the goods shipped to WETCO during the 20-day period prior to September 28, 2007 were pre-paid.

12. Ms. Beverage's testimony that the "pre-paid" notation did not really mean that the products were actually pre-paid is not persuasive. Ms. Beverage testified that the "pre-paid" notation was the "closest" description of the parties' agreement, and that there was no alternative notation that would adequately describe the parties' agreement. The court does not find this testimony persuasive. If WETCO's regular wires were to be applied to old invoices, each shipment of goods would essentially be credit sales on specific terms, which is an entirely different type of transaction than a pre-paid shipment of goods.

13. During the hearing, PFG Magee introduced exhibits that it contends show that the wire payments were applied to the oldest unpaid invoices, which corroborates Ms. Beverage's testimony. These exhibits do not, however, overcome the weight of evidence supporting WETCO's characterization of the agreement. Many of these documents are internal PFG documents . Some documents were provided to WETCO's outside accountant, but, taken as a whole, documents showing that PFG Magee internally allocated some payments from

WETCO to older invoices does not establish PFG Magee's characterization of the parties' agreement, nor do they overcome the evidence that the shipments of the 20-Day Goods were pre-paid.

Based upon the foregoing, the court finds that PFG has not satisfied its burden of establishing a basis for an administrative expense claim pursuant to section 503(b)(9). Accordingly,

**IT IS ORDERED** that the Motion is **DENIED.**

###